

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**JONATHAN K. BANKS,**

**Plaintiff,**

**v.**

**JAMES OWENS, III, et al.,**

**Defendants**

FILED
JUN 15 2018
KATE BARKMAN, Clerk
By________ Dep. Clerk

**No. 17-CV-5423-WB**

**PLAINTIFF'S MOTION OPPOSING DEFENDANT MOTION TO DISMISS**

Plaintiff, Jonathan K. Banks, hereby moves this Court for an Order denying the Defendant's (City's) Motion to Dismiss.[1] In support of this motion, Plaintiff incorporates by reference the arguments and authorities set forth in his accompanying Memorandum of Law.

WHEREFORE, Plaintiff, Jonathan K. Banks, respectfully request that this Honorable Court GRANT his Motion Opposing Defendant's Motion to Dismiss, and to DENY defendant's Motion to Dismiss.

Respectfully submitted,

Jonathan K. Banks
6051 Webster Street
Philadelphia, PA 19143

(267) 575-2441
jkbanks48@comcast.net

Date: June 15, 2015

[1] Defendant's counsel misnamed the caption, the case is not Jonathan Banks v City of Philadelphia, et al. The case is Jonathan K. Banks v James Owens, III, et al.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**JONATHAN K. BANKS,**

**Plaintiff,**

**v.**

**JAMES OWENS, III, et al.,**

**Defendants**

FILED
JUN 15 2018

**No. 17-CV-5423-WB**

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**
**MOTION OPPOSING DEFENDANT'S MOTION TO DISMISS**

Plaintiff, Jonathan K. Banks, does not seek to circumvent Third Circuit case law by suing the (City). Sufficient factual allegations exist stating claims against each of the defendants. Therefore, this Court should not dismiss Plaintiff's claims against the defendants, and allow the case to proceed to trial, and allow a jury to decided whether or not the defendants are liable to the Plaintiff for depriving Plaintiff of his constitutional rights.

## I. PROCEDURAL HISTORY

This is not a case where the Plaintiff was attempting a courtship[2] with defendant Meghan Bachman.[3]

The procedural history is outlined in the docket. The defendant's synopsis is not completely accurate, but fair, except that Plaintiff contents that defendant's motion be denied, and defendants should not be dismissed from this action.

## II. FACTUAL ACKGROUND

Plaintiff contests defendant's characterization in paragraph 1 under 'FACTUAL BACKGROUND' where the defendant states: "While driving the shuttle bus, Plaintiff frequently called out and/or made gesture towards Ms. Bachman." This is an incorrect characterization. Prior to my first official introduction to Meghan Bachman, on July 27, 2015, Plaintiff never called out or gestured to Meghan Bachman, and after they had became acquainted, Plaintiff only periodically acknowledged Meghan Bachman. It wasn't always feasible to acknowledge Meghan Bachman.[4]

What defendant's counsel is failing to acknowledge is Meghan Bachman went to the Franklin Institute staff because she learned that I had to register as a sex offender,

---

[2] a period during which a couple develop a romantic relationship, especially with a view to marriage. Google Dictionary.

[3] ".... Not having a wedding ring allowed allowed me to think of you as possibly being my future "sweet heart". Someone whom I would be honored to share life with. I would love you for the rest of my life - never to change. 1st E-mail, September 29, 2015. "When I first met You. You said we could be friends, or could be friends. Were you sincere about it? If so, I would really like that. We could work out together (Go for a run), or I could just be a change for you from time to time (hang out; get something to eat or drink; dancing; movie; whatever) Just understand, I'm not trying to "lock you down". Just want to be a good friend." 3rd E-mail, October 7, 2015.

[4] Traffic conditions on 20th Street, Residents alighting, etc., may have prevented acknowledging Meghan Bachman if Plaintiff even saw her during the 830 am trip which was not always the case.

and was concerned. There were no threats or conduct of a sexual nature expressed, nor was Meghan Bachman intimidated in any way. Excising this fact, there was nothing in Plaintiff's conduct nor the e-mails that supported or justified the charges - thus no probable cause.[5] , The Franklin Institute staff advised Meghan Bachman to contact police. The police told Meghan Bachman that there was nothing they could do because Plaintiff was, in their estimation, and admirer and not a stalker. Discovery will, hopefully, reveal how contacting the police all came about from the report that, hopefully, Richard Rabena has made in connection with this incident that outlines the steps taken, personnel contacted, etc. which in turn will ultimately lead to who instructed Meghan Bachman not to contact Plaintiff and the reason why. For the reasons propounded, infra, along with the footnote information, defendants motion must be denied and defendants must be held to stand trial.

[5] Plaintiff contacted the US Department of Justice, Civil Rights Division, Criminal Section on April 6, 2018. On April 10, 2018, Plaintiff received a response that brought to the Plaintiff's attention that the FBI - Philadelphia Office, whom Plaintiff has visited numerous times and provided documentation, in support of his contentions, informed the US Department of Justice that I was tried in the Municipal Court of Philadelphia County and a preliminary hearing was held on October 29, 2015, and that Judge Wendy Pew found probable cause for the arrest by the special victims unit police officer. PLAINTIFF NEVER ATTENDED A PRELIMINARY HEARING NOR WAIVED THE PRELIMINARY HEARING. THE PRELIMINARY HEARING WAS CONTINUED ON OCTOBER 29, 2015. THE MUNICIPAL COURT DOCKET CLEARLY SHOWS THAT THE PROCEEDING ON OCTOBER 29, 2015 WAS CONTINUED. THE BAIL REDUCTION REQUEST HEARING ON NOVEMBER 23, 2015 WAS A HEARING THAT WASN'T REALLY NECESSARY BECAUSE THE BAIL ISSUE COULD HAVE BEEN ADDRESSED AT THE PRELIMINARY HEARING OR THE DAY IT WAS CONTINUED.

## III. ARGUMENT

As to all defendants, Plaintiff recites *Conley v Gibson*, 355 US 41, 47 (1957)[6]:

> the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.

See also Federal Rules of Civil Procedure, Rule 8(a)(2).

Paragraph 46, of Plaintiff's third amended complaint, specifically, conforms to Rule 8(a)(2), and contradicts defendant's contention in it's Argument, section A, for dismissal.

In Argument, section A, of defendant's motion to dismiss, defendant incorrectly asserts:

> **Plaintiff makes no averments whatsoever with respect to a municipal policy or custom. Other than naming the City as a defendant, there is no language in the Second Amended complaint that even attempts to state a claim under *Monell.***
> (emphasis added).

Plaintiff makes the following averment with respect to alleging a *Monell claim:*

> 46. Not being provided copies of the documents, under Monell, which substantiates the claim against the City of Philadelphia and holds the City of Philadelphia liable, is a practice and custom that effectively leaves indigent defendants, similarly situated, helpless because the public defenders also participate in the custom and practice as evinced in my case. Being provided with the criminal complaint and affidavit of probable cause would allow the accused the opportunity to challenge the probable cause finding at a hearing which I believe are not held to often.

(Page 29, Third Amended complaint)

That portion of the paragraph demonstrates that Plaintiff wasn't aware that a preliminary hearing or a waiver of the preliminary hearing, on the misdemeanor charges, was a prerequisite to holding an accused to stand trial.

Plaintiff agrees with the defendant's counsel that the applicable standard for civil liability under the theory of vicarious liability a.k.a. Respondeat Superior is misstated. In Kentucky v Graham 473 US 159 (1985), the US Supreme Court addresses the differences between official and personal capacity suits. In Monroe v Pape, 365 US 167 (1961), the US Supreme Court held that the existence of a state law claim did not preclude the federal claim, and the Court also

---

[6] Abrogated in part, 2007

clarified "under color of state law" as 'misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of the state law, is action taken 'under color of' state law.' The Monell Court overruled Monroe insofar as it held that a municipality is not a 'person' under a 42 USC section 1983 claim.

On page 9, paragraph 14 (c) and pages 46-46, paragraph 83, of Plaintiff's third amended complaint, Plaintiff outlines the conduct to constitute defendant's liability. Sergeant Donald O'Hara, Jr, failed to adequately peruse the police investigation report, and thus failed to adequately train and/or supervise Detective Owens, and should not have approved the police investigation report because the charges were not adequately supported by virtue of the interview between Meghan Bachman and Det Owens, and for the reasons that follow.

There wasn't any follow up with the first police officer[7] Meghan Bachman spoke with, on 9/30/2015,[8] that told her there was nothing they could do because the circumstances did not warrant police intervention. Why wasn't this police officer interview by Det Owens? Why wasn't this police officer interviewed by then ADA or defense counsel, and listed as a witness? Also, Meghan Bachman told Det Owens she was not threatened or felt threatened.

In order for this issue to be properly addressed, you have to put all of the elements into perspective. One of the most important aspects of this entire malicious prosecution and conspiracy is that not one of the acts of the Plaintiff was prohibited. When the statutes are addressed in relation to the alleged conduct, what acts of the Plaintiff support harassment under 18 PA CSA 2709 (a)(4) when reviewing the e-mails? What acts of the Plaintiff support stalking under 18 PA CSA 2709.1 (a)(1) when you take into account the omitted information pertaining to the shuttle bus and how it relates to Meghan Bachman's travels along 20th Street between

---

[7] Police Officer McDevitt, Badge #183. Incident report states no injuries and makes no mention of any threats or actions of a sexual nature.

[8] See Exhibit A

Market Street and the Benjamin Franklin Parkway between 830am and 900am while the shuttle bus was heading into Center City and Meghan Bachman was heading to the Franklin Institute? As stated previously, when you excise the fact that the Plaintiff has to register as a sex offender, was not told to by Meghan Bachman or someone else, on Meghan Bachman's behalf, not to contact Meghan Bachman in any form. Plaintiff went to visit Meghan Bachman 3 times.[9] The first 2 times the encounters went well. The 3 visit, on October 13, 2015, did not go well because Meghan Bachman learned of Plaintiff's registration status on September 30, 2015 unbeknownst to Plaintiff. Meghan Bachman discussed her concerns with a police officer, on September 30, 2015, that told her there was nothing that could be done. Logic dictates that Meghan Bachman informed Richard Rabena who, logic dictates, informed Kenneth Kleinman. Since there was nothing the police could do at that time, logic dictates, an alternative strategy was necessary, i.e. not to contact Plaintiff with the hope to manufacture a case against Plaintiff. Even though Meghan Bachman did not respond to Plaintiff's e-mails, Plaintiff's conduct is not prohibited. Only after Plaintiff went to visit Meghan Bachman for a 3rd time, on October 13, 2015, and Meghan Bachman avoided Plaintiff by turning around upon seeing Plaintiff, did Plaintiff surmise that Meghan Bachman knew about his registration status.[10] The next day, October 14, 2015, Meghan Bachman sends Plaintiff a cease and desist letter.[11] Plaintiff signed and returned the letter believing that no further attention would be direct towards him.

On October 15, 2015 at approximately 6pm, Meghan Bachman is at the Philadelphia Police Special Victims Unit providing a statement. Based on the statement and reasons not

---

[9] Plaintiff did not attempt "to visit her again on multiple other occasions", as is characterized deceptively by defendant's counsel.

[10] Had Plaintiff and Meghan Bachman become good friends, Plaintiff would have, eventually, explained his past situation with her.

[11] Plaintiff was very reluctant to sign and return the letter because Plaintiff did not understand how such innocent conduct turned into something so dreadful. But since the letter stated: "to ensure compliance with this letter, and to halt any legal action I may take against you, I require you to sign this letter below and mail it back to me within 10 days of receipt of this letter...."

consistent with justice, Det Owens decided to seek a prosecution. On October 16, 2015, Det Owens confers with ADA Erin O'Brien, who, according to the investigation report approved the Plaintiff's arrest, but ADA Allison Borgatti is the ADA who purportedly approved the arrest warrant information and is not specifically identified in the investigation report.[12] In less than 24 hours Det Owens was able to procure an arrest warrant "when no immediate action [was] called for and time [could have been] devoted to an adequate preliminary investigation, ...."[13]

On October 17, 2015, Plaintiff attended his first high school reunion - the Class of 1980. In Plaintiff's 3rd e-mail to Meghan Bachman, Plaintiff discussed what he was going to do that day.[14] On October 18, 2015, Plaintiff, after arriving home, prepares for the subsequent work week. On October 19, 2015, after completing his shuttle bus assignment, and after being relieved from the 2nd assignment, midway through, Plaintiff was arrested at his place of employment.

It took 15 days for Det Owens to complete the investigation report. Plaintiff was arraigned on October 20, 2015. The preliminary hearing was scheduled for October 29, 2015. The preliminary arraignment was continued. Det Owens investigation report was completed on November 4, 2015, and was approved by Sergeant Donald O' Hara on November 14, 2015. Why the protraction?

The problem with the validity of any of the information produced for the prosecution by Det Owens is suspect, and Sergeant Donald O' Hara should have detected the flaws and

---

12 ADA Erin O'Brien's name is not affixed on any of the Arrest Warrant Information documents.

13 Neczypor v Jacobs, 403 Pa 303, 309 (1961), cited in Wainauskis v Howard Johnson Co., 339 Pa super 266, 277-278 (1985), which is cited in Burgos v Morgan, Lewis, & Bockius, LLP, Not reported in A.3d (2017).

14 "On the 17th, I'm attending my high school reunion, in Pottstown (I don't want to write the number) - The football game that afternoon, and the main event that evening." E-mail, October 7, 2015

inconsistencies with the investigation, and query his subordinate's actions, but instead approved of the custom and policy circumventing the proper process.[15]

Contrary to the defendant's contention, Plaintiff has pleaded numerous actionable facts that a jury should be permitted to ponder over.

Brock Atkins, the "Franklin Institute Defendants" counsel, stated in his motion to dismiss, on page 8:

> **There is no question that state action exists in this case by virtue of Plaintiff's arrest by Philadelphia Police.**

If the non-moving party has produced more than a "mere scintilla of evidence" demonstrating a genuine issue of material fact, then the court may not credit the moving party's version of events against its opponent's version, even if the quantity of the moving party's evidence far outweighs that of its opponent.

Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).[16]

In most circumstances, a plaintiff cannot proceed against a police officer for a claim of malicious prosecution because a prosecutor, not a police officer, 'initiates' criminal proceedings against an individual."

Stango v. Rodden, No. 00-5709, 2001 WL 1175131, at *4 (E.D. Pa., Aug. 21, 2001) (quotations and citations omitted).[17]

Defendant's counsel contends that the information provided to Det Owens by Meghan Bachman demonstrate the existence of probable cause to arrest Plaintiff.

Defendant's counsel propounds 7 alleged facts to support the proposition that Det Owens had probable cause to arrest Plaintiff, but not one of the alleged facts describe any threats or conduct of a sexual nature.

In the first alleged fact presented in support, Plaintiff was not prohibited from approaching Meghan Bachman, and contrary to Meghan Bachman's false assertions, Meghan

---

[15] Your Honor, Plaintiff is not going to delve into the particulars anymore at this juncture. It is believed these contentions are matters ripe for a jury to consider.

[16] Memorandum and Order, O'Connor v City of Philadelphia, et al, Page 7, 05-CV-02879-LS

[17] Memorandum and Order, O'Connor v City of Philadelphia, et al, Page 16, 05-CV-02879-LS

Bachman welcomed Plaintiff, and allowed Plaintiff to walk with her to Suburban Train Station during the first encounter. During the second encounter, Meghan Bachman allowed Plaintiff to walk with her as she was on her way to meet friends. The third encounter Meghan Bachman turned around to avoid Plaintiff because she learned that he had to register as a sex offender.

The Plaintiff sent 5 e-mails, but the Plaintiff wasn't prohibited from sending them.

Plaintiff's registration status is not dispositive as to probable cause.

Plaintiff was charged with harassment, pursuant to 18 PA CSA 2709 (a)(4). Not one of the e-mails satisfies the statute. Plaintiff was also charged with stalking, pursuant to 18 Pa CSA 2709.1 (a)(1). Not one of the Plaintiff's visit were prohibited. Plaintiff neither threatened nor, according to Meghan Bachman's response at the interview with Det Owens, felt threatened.

For analogy purposes only: Let's say Plaintiff meets a woman who shows interest in him and they begin to form the foundation to establishing a good friendship. Let's say, the Plaintiff googles the woman's name and learns she killed her last male friend. Irrationally, Plaintiff acted without knowing any of the circumstances surrounding the incident. Coincidentally, Plaintiff contacts the police because Plaintiff learned that this woman had killed her last male companion, and feared Plaintiff could experience the same fate. Logic dictates: What can the police really do? The woman hasn't done anything wrong except show interest in the Plaintiff. The woman has a good job, working for a prestigious company, a beautiful automobile, good credit, and despite what Plaintiff has learned about her, appears to be a very respectable person. Upon the revelation, Plaintiff avoids the woman. She e-mails Plaintiff, but Plaintiff declines to reply, and fails to inform her not to contact Plaintiff again. Curious as to why Plaintiff hasn't replied to her e-mails, she stops by Plaintiff's work location. Plaintiff see her and retreats back into the building. From that day forth, Plaintiff does not hear anything from the woman, but Plaintiff contacts the police again because she showed up at Plaintiff's job. Plaintiff then goes to

an interview with a detective and is not forth coming and distort facts.  The fore mentioned illustration is exaggerated, but it covers basically how the prosecution came about.

Several factors weigh against all of the defendants in this action as it relates to the malicious prosecution of Plaintiff:

1) Detective Owens and not Allison Borgatti nor Erin O'Brien, nor Erika Wevodau initiated the prosecution.

2) Plaintiff was not afforded a Preliminary Hearing (only in Philadelphia and Allegheny counties in Pennsylvania.)

3)  Det Owens may have had to testify at trial to discuss the evidence that allegedly supported the charges.  The affidavit is just volume filled with unnecessary excerpts from Plaintiff's friendly e-mails, that substantiate no penal code violation, and contain inadmissible and omitted evidence, which should have required ADA Allison Borgatti to inform Det Owens to redo the affidavit, which defendant's counsel failed to address.  ADA Erin O'Brien knew of this, ADA Allison Borgatti knew of this, and ADA Erika Wevodau knew of this.  Sergeant Donald O'Hara knew that arrest was not based upon probable cause.

Plaintiff believes the fact alone that the prosecutor did not initiate the prosecution, even though it is typical for the prosecutor, or a prosecution representative to initiate the prosecution, weighs heavily against all defendants, and particularly Det Owens.[18]

---

[18] See Judge Brobson's Opinion and Order, Commonwealth Court of Pennsylvania, No. 1648 CD 2016, Filed:  March 9, 2018

## IV. CONCLUSION

For the reasons set forth above, Plaintiff, respectfully request that this Honorable Court enter the default judgment of April 12, 2018, as to defendants Det Owens and the City of Philadelphia for a failure to properly appear and respond[19] and, in the alternative, deny defendants motion to dismiss.

Sincerely and Respectfully submitted,

Jonathan K. Banks
6051 Webster Street
Philadelphia, PA 19143

(267) 575-2441

**jkbanks48@comcast.net**

Date: June 15, 2018

---

[19] Defendants James Owens, III and the City of Philadelphia's response was due by April 5, 2018. See Docket entry 4/12/2018.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

**JONATHAN K. BANKS** **CIVIL ACTION**
**Petitioner**

**V.** **NO. 17-5423**

**JAMES OWENS, III, BADGE #0701, et al.**
**Defendants**

FILED
JUN 15 2018
KATE BARKMAN, Clerk
By ______ Dep. Clerk

---

CERTIFICATE OF SERVICE

I herby certify that on the date below, Plaintiff's Motion Opposing Defendant's Motion to Dismiss was served via US Postal Service First Class Mail on the following:

Jonathan Cooper
Assistant City Solicitor
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102

Jonathan K. Banks
6051 Webster Street
Philadelphia, PA 19143
(267) 575-2441
jkbanks48@comcast.net

Date: June 15, 2015

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**JONATHAN K. BANKS,**

**Plaintiff,**

**v.** **No. 17-CV-5423-WB**

**JAMES OWENS, III, et al.,**

**Defendants**

---

**ORDER**

AND NOW, this ____________ day of _______________, 2018, upon consideration of Defendant's Motion to Dismiss, and Plaintiff's Motion Opposing Defendant's Motion to Dismiss, it is **HEREBY ORDERED** that Plaintiff's Motion Opposing Defendant's Motion to dismiss is **GRANTED,** and defendant's Motion to Dismiss is **DENIED.**

BY THE COURT:

________________________
Wendy Beetlestone
United States District Judge
Eastern District of Pennsylvania

# EXHIBIT A

PHILADELPHIA POLICE DEPARTMENT

# COMPLAINT OR INCIDENT REPORT

| YEAR | DIST.OCC. | D.C. NO. | SECT. | DIST | VEH. NO. | REPORT DATE |
|---|---|---|---|---|---|---|
| 15 | 9 | 41939 | 2 | 9 | 23 | 9-30-15 |

CRIME OR INCIDENT CLASSIFICATION: Disturbance/Harassment — CODE: 2600 — TIME OUT: 12:03

LOCATION OF OCCURRENCE: 222 N 20TH ST — TYPE OF PREM.: 78

DATE OF OCCUR.: 9-30-15 — DAY CODE: 3 — TIME OF OCCUR.: 1144 — NATURE OF INJURY: None

COMPLAINANT: Meghan Bachman — AGE: 25 — RACE: W — SEX: F — PHONE (HOME): [redacted]

ADDRESS: [redacted] — PHONE (BUSINESS):

FOUNDED: ☒ Yes ☐ No — REPORT TO FOLLOW: ☐ Yes ☒ No ☐ Close Out — UNIT — CODE — INV. CONT. NO.

WITNESS: ☐ Yes ☐ No — TRACEABLE PROP.: ☐ Yes ☐ No — UNIQUE DESCRIPTION OF OFFENDER: ☐ Yes ☐ No — OTHER EVIDENCE: ☐ Yes ☐ No

DESCRIPTION OF INCIDENT (Include Description of Crime Scene if Applicable):

Re: Pt Compl

Compl states she recieved an e-mail from below male on the above date & time that stated [illegible] [illegible] he is over her and asked her out. Compl states below male approached her a few times to talk to her. Compl does not know below male. Compl advised of Private criminal complaint.

WITNESS — ADDRESS — PHONE NO.

OFFENDER INFORMATION: Jonathan Keith Bank [redacted] 6'0" 185 lbs

[redacted]

PROPERTY DESCRIPTION (Include Make, Model, Color and Serial No. Where Applicable) — PROP. CODE — INSURED ☐ Yes ☐ No — STOLEN VALUE $

VEHICLE 1 — OWNER'S NAME — VEHICLE 2 — OWNER'S NAME

VEHICLE 1 — OPERATOR'S NAME — VEHICLE 2 — OPERATOR'S NAME

WANTED/STOLEN MESSAGE SENT — Operator No. — Date — DIST./UNIT TERMINAL — RECEIPT NO. — SENT BY

REPORT PREPARED BY: P/O McDevitt [redacted] — NO.: 1831 — DIST./UNIT: 9 — TOTAL PAGES: 1 — PAGE NO.: 1

REVIEWED BY: [signature] — NO. — DIST./UNIT: 9 — FOR FINAL DATE — CAN. NO.

PURSUANT TO ACT 155 OF 1998, THE BELOW PERSON ACKNOWLEDGES RECEIPT OF THE NOTIFICATION OF VICTIM SERVICES FORM.

75-48 Front (Rev. 11/98)

App# 21887
6/14/18
MZ

P/O McDevitt
#1831