IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JONATHAN K. BANKS,<br>　　Plaintiff,<br><br>v.<br><br>JAMES OWENS, MEGHAN BACHMAN, KENNETH D. KLEINMAN, RICHARD D. RABENA, FRANKLIN INSTITUTE, ADA ALLISON BORGATTI, ADA ERIN O'BRIEN AND ADA ERIKA WEVODAU,<br>　　Defendants. | CIVIL ACTION<br><br><br>NO. 17-5423 |

**MEMORANDUM OPINION**

Pro se Plaintiff Jonathan K. Banks brings this action pursuant to 42 U.S.C. §§ 1983, 1985(3), and 1988, 18 U.S.C. §§ 241, 242, and state law, primarily asserting claims of malicious prosecution and conspiracy. Banks was tried and acquitted on charges related to the stalking and harassment of Meghan Bachman. In this suit, Banks alleges that numerous individuals involved with his prosecution conspired to violate his rights.

Banks has named a total of eleven Defendants: James Owens III, a detective in the Special Victims Unit of the Philadelphia Police Department; Donald O'Hara, Jr., a sergeant in the Philadelphia Police Department; Assistant District Attorneys ("ADA") Allison Borgatti, Erin O'Brien, and Erika Wevodau; the City of Philadelphia; Geoffrey Kilroy, the public defender who represented Banks at his criminal trial; the Franklin Institute; Meghan Bachman, the alleged victim of Banks's stalking and an employee of the Franklin Institute; Richard D. Rabena, the Vice President of Operations and Capital Projects for the Franklin Institute; and Kenneth D. Kleinman, advisory counsel for the Franklin Institute (collectively, "Defendants"). Defendants have filed motions to dismiss Banks's Third Amended Complaint. For the reasons discussed below, Defendants' Motions shall be granted.

## I. BACKGROUND

According to his Third Amended Complaint, Banks was employed as a bus driver in Philadelphia, and began to notice Bachman while driving his bus route. The route took him near the Franklin Institute where Bachman worked. After observing Bachman "for almost a year," Banks initiated contact with her on July 27, 2015, by parking his car outside the Franklin Institute and waiting for Bachman to exit the building. He describes this first meeting as follows:

> When Ms. Bachman crossed [the] Street, I approached her, and introduced myself. I told her my name was Jonathan, and extended my hand to shake her hand. We shook hands. I then asked her what was her name, and she asked why. . . . I then said to her just a moment, and pulled out my cell phone that I had set to the Franklin Institute's website. I then scrolled down to a photograph, I believed was Ms. Bachman, and asked her was that her. She said yes. I then asked her when did she cut her hair because the photograph of the person resembling her had long hair and the photo wasn't completely clear. . .

Banks subsequently waited for Bachman outside the Franklin Institute on two other occasions. On August 26, 2015, Banks greeted Bachman as she exited the building. Bachman told Banks she was on her way to meet friends. Banks then asked if he could "accompany her," and also "asked her about the ankle brace she has been wearing several months prior." Banks was pleased with this encounter because he had "wanted to see her face without the sunglasses close up," and was able to do so. On October 13, 2015, Banks again waited outside the Franklin Institute. When Bachman eventually exited the building, she looked up, saw Banks, and then "immediately turned around."

In addition, between September 29, 2015 and October 12, 2015, Banks sent Bachman five emails. In the emails, Banks expressed his affection for Bachman and articulated his hopes to be closer to her. In one email, Banks also attached a photograph he had taken of a home in the neighborhood where he believed Bachman lived. After Banks's first email, Bachman searched

for Banks's name online and discovered that Banks was a registered sex offender. Bachman also discussed her concerns about Banks with others at the Franklin Institute. Banks avers that it is likely that Bachman spoke with Kleinman and Rabena, both of whom are employees of the Franklin Institute named in this action. On October 14, 2015, Bachman sent Banks a "cease and desist" notice via email, copying Kleinman.

Upon learning that Banks was a registered sex offender, Bachman contacted the police. Detective James Owens thereafter investigated. Working with ADA O'Brien, Owens prepared an affidavit of probable cause, an application for an arrest warrant, and an investigation report. Sergeant O'Hara reviewed and approved the investigation report; ADA Borgatti reviewed and approved the affidavit and warrant application. The affidavit included statements from Bachman about the three encounters with Banks, the emails sent by Banks, and the fact that Banks is a registered sex offender.

Based on the affidavit, a magistrate judge issued a warrant to arrest Banks on charges of stalking and harassment. On October 19, 2015, Banks was arrested. On October 20, 2015, Banks was arraigned. At the arraignment, he was not given copies of the complaint or probable cause affidavit. Subsequently, Banks was tried, with public defender Kilroy serving as his counsel and ADA Wevodau prosecuting. On December 3, 2015, he was acquitted of both charges.

Banks filed this lawsuit on December 4, 2017. Banks subsequently filed amended complaints on December 20, 2017 and January 22, 2018. Defendants moved to dismiss the Second Amended Complaint and filed supporting briefing. Banks then filed his Third Amended Complaint on May 18, 2018. The Third Amended Complaint includes the following counts:

Count 1. Section 1983 claim of malicious prosecution in violation of the Fourth and Fourteenth Amendments against Detective Owens;

Count 2. Section 1983 and state law claim for civil and criminal conspiracy to engage in malicious prosecution against Detective Owens; ADAs Borgatti, Wevodau, and O'Brien; public defender Kilroy, and Franklin Institute employees Kleinman and Rabena;

Count 3. Section 1983 municipal liability claim against the City of Philadelphia for failure to provide a copy of the charging document and probable cause affidavit at Banks's preliminary hearing;

Count 4. Section 1983 vicarious liability claim, against Sergeant O'Hara for his supervision of Owens; and

Count 5. Vicarious liability claim, against the Franklin Institute, for any torts of its employees.

Throughout the Third Amended Complaint, Banks also invokes other legal precepts, such as 18 U.S.C. §§ 241, 242, the Pennsylvania Rules of Professional Conduct, and various Pennsylvania statutes. Defendants now move to dismiss.

## II. LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain sufficient facts that, when accepted as true, state a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007). A complaint is facially plausible if it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not establish a plausible allegation. *Id.*

## III. DISCUSSION

Where, as here, the plaintiff proceeds pro se, the Court "has an obligation to construe the complaint liberally," *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009), and must "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name," *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 248 (3d Cir. 1999). However, there are limits to the

Court's procedural flexibility: "pro se litigants still must allege sufficient facts in their complaints to support a claim" and "they cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citations omitted).

### A. Federal Section 1983 Claims (Counts One-Four)

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a person acting under color of state law engaged in conduct that violated a right protected by the Constitution or laws of the United States." *Morrow v. Balaski*, 719 F.3d 160, 165–66 (3d Cir. 2013), *as amended* (June 14, 2013). "Accordingly, the first step in evaluating a [S]ection 1983 claim is to identify the exact contours of the underlying right said to have been violated and to then determine whether the plaintiff has alleged a deprivation . . . at all." *Id.* at 166 (internal punctuation omitted). Another threshold issue is the color of state law element: "there is no liability under [Section] 1983 for those not acting under color of law." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995).

#### i. Count One: Malicious Prosecution Against Detective Owens

To maintain a claim of malicious prosecution in violation of the Fourth Amendment under Section 1983, "a plaintiff must show: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005). As to the absence of probable cause, "[w]here, as here, a probable cause finding was made by a neutral magistrate in connection with a warrant

5

application, a plaintiff must establish first, that the officer, with at least a reckless disregard for the truth, made false statements or omissions that created a falsehood in applying for a warrant, and second, that those assertions or omissions were material, or necessary, to the finding of probable cause." *Geness v. Cox*, 902 F.3d 344, 356-57 (3d Cir. 2018). "Probable cause exists if the facts and circumstances within the Officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing that a crime had been committed." *Zimmerman v. Corbett*, 873 F.3d 414, 418 (3d Cir. 2017) (internal citations and punctuation omitted). "Probable cause requires more than mere suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt." *Id.* (internal punctuation omitted).

The facts as pled by Banks in his Third Amended Complaint establish probable cause to prosecute Banks for stalking[1] and harassment.[2] Banks admits that, as a perfect stranger, he waited outside Bachman's place of employment on three separate occasions; knew Bachman's name and had her work profile available on his phone when he first initiated contact with her; told Bachman that he had observed her leg injury several months prior; found Bachman's email addresses; sent multiple unsolicited emails; photographed a home in the neighborhood where he believed Bachman lived; and often belabored his affection for Bachman, her physical attributes, and his desire to be closer to her. Bachman then recounted these facts to the police, and Owens

---

[1] Under the provision of Pennsylvania law that Banks was charged with, "[a] person commits the crime of stalking when the person . . . engages in a course of conduct or repeatedly commits acts toward another person, including following the person without proper authority, under circumstances which demonstrate either an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person." 18 Pa. C.S.A. § 2709.1(a)(1).

[2] Under the provision of Pennsylvania law that Banks was charged with, "[a] person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person . . . communicates to or about such other person any lewd, lascivious, threatening or obscene words, language, drawings or caricatures." 18 Pa. C.S.A. § 2709(a)(4).

6

included them in the probable cause affidavit. This string of events is more than sufficient "to warrant a prudent man in believing that a crime had been committed," *id.*, and specifically that Banks was following Bachman and communicating lewdly or threateningly with her in violation of the stalking and harassment statutes.

Banks contends that he saw Bachman regularly from his bus route and thus innocently learned of her habits, that he acted respectfully, that he held no ill intent, and that Owens would have uncovered this information if Owens had pursued the investigation more diligently. However, Owens was under no specific obligation to interview Banks and learn his side of the story. *See Lincoln v. Hanshaw*, 375 F. App'x 185, 190 (3d Cir. 2010) ("The officers had no further constitutional duty to continue their investigation in an attempt to unearth potentially exculpatory evidence undermining the probable cause determination.") (citing *Baker v. McCollan*, 443 U.S. 137, 145-46 (1979)). Further, Banks's characterization of the events does not undermine the fact that Owens "had probable cause to believe [Banks] committed the offenses charged based on [Owen]'s reasonable perception of the facts and circumstances surrounding [Banks]'s conduct." *Kossler v. Crisanti*, 564 F.3d 181, 194 (3d Cir. 2009) (en banc). "[W]hile [Banks]'s arguments may well have been sufficient to raise a reasonable doubt that . . . resulted in an acquittal at trial, they do not negate the fact that [Owens] had probable cause." *Zimmerman*, 873 F.3d at 419.

Accordingly, Banks's malicious prosecution claim fails.

### ii. Count Two: Civil and Criminal Conspiracy

Banks next asserts a Section 1983 claim against many of the Defendants for conspiracy to engage in malicious prosecution. "The elements of a claim of conspiracy to violate federal civil rights are that (1) two or more persons conspire to deprive any person of constitutional rights;

(2) one or more of the conspirators performs any overt act in furtherance of the conspiracy; and (3) that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States, with the added gloss under § 1983 that the conspirators act under the color of state law." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 294 n.15 (3d Cir. 2018) (internal quotation marks omitted).

Banks's allegations are insufficient. First, as discussed, the Fourth Amendment malicious prosecution claim fails, and thus any derivative conspiracy claim fails as well. *See Noviho v. Lancaster Cty. of Pennsylvania*, 683 F. App'x 160, 166 (3d Cir. 2017) (holding that Section 1983 conspiracy claim was "dependent on the existence of an underlying substantive constitutional violation"). Second, Banks has not adequately alleged a conspiracy. In support of the conspiracy claim, Banks alleges that Bachman was instructed by someone not to contact him; that the unfounded nature of his prosecution is "crystal clear"; and that it is apparent that,

> [A]ll of the individual Defendants agreed and understood that they would[] plot, plan, conspire or act in concert, with respect to the deprivation of Plaintiff's Constitutional rights, by fabricating evidence, initiating false criminal charges, misrepresenting the case to the Magistrate Judge, or just coordinating their efforts for a common objective.

However, such vague and conclusory allegations do not raise a plausible inference that the Defendants reached an illicit agreement to violate Banks's constitutional rights. *See, e.g.*, *Opoku v. Educ. Comm'n for Foreign Med. Graduates*, 574 F. App'x 197, 202 (3d Cir. 2014); *Miller v. Brady*, 639 F. App'x 827, 831 (3d Cir. 2016).

Accordingly, Count Two must be dismissed.

### iii. Count 3: Municipal Liability

Banks asserts a municipal liability claim against the City of Philadelphia. "A municipality is liable under § 1983 when a plaintiff can demonstrate that the municipality itself,

through the implementation of a municipal policy or custom, causes a constitutional violation." *Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165, 175 (3d Cir. 2017), *as amended* (Sept. 22, 2017); *see also Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

Here, Banks's alleged injury is that he did not receive a copy of the complaint and affidavit of probable cause at his arraignment, in violation of Pennsylvania law. Even assuming this injury is cognizable as a constitutional deprivation under Section 1983 and *Monell*, Banks has not adequately alleged that the City has a policy or custom of depriving defendants of this documentation. Banks does not allege a pattern of similar failures, instead pointing only to his own experience. But Banks's allegations regarding his own experience do not suffice, since he does not allege the involvement of anyone with policymaking authority, *see Santiago v. Warminster Twp.*, 629 F.3d 121, 135 (3d Cir. 2010), nor does his alleged injury rise to the level of obviousness that might permit single-incident liability to attach, *see Thomas v. Cumberland Cty.*, 749 F.3d 217, 224 (3d Cir. 2014) ("single-incident liability" applies only in "narrow range" cases) (quoting *Connick v. Thompson*, 563 U.S. 51, 63 (2011)). Banks provides no other factual allegations in support of this claim. Accordingly, Banks's claim against the City of Philadelphia must be dismissed.

### iv. Count Four: Vicarious Liability Against Sergeant O'Hara

Banks sues O'Hara contending that O'Hara is liable as Owens's supervisor for Owens's conduct. A claim for supervisory liability[3] under Section 1983 "necessarily includes as an element an actual violation at the hands of subordinates." *Santiago*, 629 F.3d at 130. Because, for

---

[3] Banks refers to Count Four as a "vicarious liability – respondeat superior" claim. However, Banks acknowledges that respondeat superior liability is inapplicable to Section 1983, *see Iqbal*, 129 S.Ct. at 1948 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."), and argues that O'Hara "had direct personal participation" in Owens's violation of Banks's constitutional rights. Accordingly, the Court construes Count Four as a claim of supervisory liability, premised on a theory of O'Hara's personal involvement. *See Santiago*, 629 F.3d at 129-30.

reasons discussed above, Banks has not adequately alleged a Section 1983 claim against Owens, Banks cannot maintain a claim for supervisory liability against O'Hara.

### v. Inapplicability of Section 1983 to Various Defendants

For the reasons given, none of the Section 1983 counts listed in the Third Amended Complaint are viable. Furthermore, in an excess of caution, any Section 1983 fails as against several of the named Defendants for the independent reason that Banks has not plausibly alleged a Section 1983 claim against those entities.

First, public defender Kilroy is not amenable to suit under Section 1983. "[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981). Banks does not allege that Kilroy's actions went beyond the traditional functions of counsel in a criminal proceeding, or that Kilroy had any connection with the state sufficient to show that he acted under color of state law. Indeed, Kilroy secured Banks's acquittal in an adversarial proceeding, by working *against* the government. Accordingly, any Section 1983 claims against Kilroy must be dismissed.

Second, ADA Wevodau's only alleged involvement is prosecuting the case against Banks. Assistant District Attorneys enjoy absolute immunity from suit under Section 1983 when "performing judicial or quasi-judicial functions." *Schneyder v. Smith*, 653 F.3d 313, 332 (3d Cir. 2011). As alleged, ADA Wevodau "was functioning as the state's advocate when performing the action(s) in question," and thus is entitled to absolute immunity. *Odd v. Malone*, 538 F.3d 202, 208 (3d Cir. 2008).[4]

---

[4] Because Banks's allegations indicate that ADA O'Brien and ADA Borgatti may have been serving in an investigative capacity, and because no viable claim has been stated against them, the Court declines to decide whether they are also entitled to absolute immunity.

10

Finally, private actors may not be sued under Section 1983 unless "there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009). Banks asserts Section 1983 claims against the Franklin Institute and Franklin Institute employees Rabena and Kleinman (and potentially Bachman as well, though the allegations are unclear). However, Banks does not provide any factual allegations that might support a finding that these Defendants acted under color of state law. *Cf. Damico v. Harrah's Philadelphia Casino & Racetrack*, 674 F. App'x 198, 203 (3d Cir. 2016) (providing example of viable private actor liability where "[a] shopkeeper . . . calls the police on a shoplifter [and] . . . (1) the police have a pre-arranged plan with the store; and (2) under the plan, the police will arrest anyone identified as a shoplifter by the store without independently evaluating the presence of probable cause.") (internal quotation marks omitted).

Accordingly, Banks's Section 1983 claims against these Defendants must be dismissed.

### B. Other Federal Claims

#### i. 18 U.S.C. §§ 241, 242

The Third Amended Complaint suggests that Banks asserts claims under 18 U.S.C. §§ 241 and 242. However, these are criminal statutes, and "[n]either statute creates a civil cause of action." *Carpenter v. Ashby*, 351 F. App'x 684, 688 (3d Cir. 2009). Accordingly, any claims under Sections 241 and 242 must be dismissed.

#### ii. 42 U.S.C. §§ 1985(3), 1988

Banks invokes 42 U.S.C. §§ 1985(3) and 1988 in his pleadings. As to Section 1985(3), Banks fails to state a claim. Section 1985(3) requires that a plaintiff allege a conspiracy "motivated by class-based invidiously discriminatory animus." *Farber v. City of Paterson*, 440

F.3d 131, 136 (3d Cir. 2006). Banks vaguely asserts, with no supporting facts, "I believe race had everything to do with how the prosecution was conducted, and the defendants had no qualms about ruining this black person's life." Because this averment is speculative and conclusory, it does not provide a basis to infer animus. Finally, Banks cannot state a claim under Section 1988 because this statute does not confer an independent cause of action. *See Carpenter*, 351 F. App'x at 687. As a result, in the absence of another, viable civil rights claim, Banks may not sue for a violation of Section 1988 alone. Accordingly, any claims under Sections 1985(3) and 1988 must be dismissed.

### C. State Law Claims

Banks suggests a number of pendent state law claims against Defendants. These include claims (1) against Owens and ADA Wevodau for official oppression under 18 Pa. C.S.A. § 5301(1); (2) against ADA Wevodau, Kleinman, and public defender Kilroy for violation of the Pennsylvania Rules of Professional Conduct; (3) against Kleinman for criminal solicitation under 18 Pa. C.S.A. § 902; (4) against ADA Wevodau for violation of the Oath of Office under 42 Pa. C.S.A. § 2522; and (5) against Bachman for criminal conspiracy under 18 Pa. C.S.A. § 903. Further, Count Five appears to be governed by state law, as Banks avers that the Franklin Institute is vicariously liable for any torts committed by its employees. Because Banks fails to assert a viable federal claim, and because diversity between the parties does not exist, this Court declines to exercise supplemental jurisdiction over any state law claim. *See Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995).

### IV. CONCLUSION

For the foregoing reasons, Banks's Third Amended Complaint shall be dismissed. Further, because (i) Banks's admissions foreclose any malicious prosecution claim, which is the

12

main thrust of his suit, (ii) many of Banks's claims border on frivolous, and (iii) Banks has now amended his pleadings on multiple occasions, this suit shall be dismissed with prejudice. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (noting that plaintiffs need not be afforded an opportunity to amend where "amendment would be inequitable or futile").

An appropriate order follows.

**BY THE COURT:**

**/s/ Wendy Beetlestone**

**WENDY BEETLESTONE, J.**

**Date: 11/29/2018**